**Sally A. WARD, Plaintiff,**

v.

**MARITZ INC., et al., Defendants.**

**Civ. A. No. 93–3935(CSF).**

United States District Court,
D. New Jersey.

July 7, 1994.

Steve S. Efron, New York City, for plaintiff, Sally A. Ward

Kerry M. Parker, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for defendant, Martiz Inc.

## OPINION

WOLFSON, United States Magistrate Judge.

Presently before the Court is the motion by defendants Maritz Inc. and Maritz Marketing Research Inc. (collectively "Maritz"), to compel the production of certain tape recordings and testimony and for sanctions. In addition to the moving papers submitted by Maritz, the Court has considered plaintiff Sally Ward's opposition papers and defendants' reply papers. Oral argument was held on July 5, 1994.

### Background

On September 2, 1993, plaintiff filed a complaint against defendants alleging sexual harassment and constructive discharge from her employment with Maritz. The present motion arises from defense counsel's deposition of plaintiff on April 13, 1994. According to Ms. Ward's deposition testimony, she secretly tape-recorded telephone conversations in late 1993 with two American Telephone and Telegraph ("AT & T") [1] employees (Linda Bauer and Lori Jakubek) and a former Maritz employee (Rasha Proctor). The conversations apparently related to "the working environment in the offices where [Ward] had been employed." Efron Affidavit, at ¶ 2. Ward placed the calls from her attorneys' office after consulting with counsel. Plaintiff's counsel advised Ward that "it would be helpful to her case to obtain statements from witnesses who were familiar with" the aforementioned working environment. *Id.* Furthermore, plaintiff and her counsel "discussed the categories of information that would be of most value and observed also that it would be best to contact witnesses who would be willing to testify openly in court." *Id.* Defense counsel was not present during the conversations, however. Ward Deposition Transcript, at 108–09. Neither Bauer nor Jakubek was aware of the recording or consented to it. Bauer Affidavit, at ¶ 4; Jakubek Affidavit, at ¶ 4. Indeed, Jakubek has certified that when she asked Ward whether the conversation was being taped, plaintiff denied recording the telephone call. Jakubek Affidavit, at ¶ 4. Additionally, there is no evidence that Proctor knew about or consented to the tape recording. At the deposition, plaintiff's counsel objected to any further questioning with re-

---

1. AT & T, a Maritz client, maintained a staff of employees at the Maritz office at which plaintiff worked. Ward's position required interaction with AT & T employees. Ward Brief, at 2; Ward Deposition Transcript, at 77.

spect to Ward's tape recording of the conversations. Ward Deposition Transcript, at 109–14.

Both Jakubek and Bauer have requested from plaintiff's counsel a copy of the their tape-recorded conversations with plaintiff. These requests were contained in letters dated April 4 and April 6, 1994, respectively. Plaintiff's counsel has not complied with such requests.

Defendants' motion to compel seeks the production of the tapes themselves as well as deposition testimony as to the content of the tapes and the circumstances under which they were created. Maritz asserts that neither the tapes nor such testimony constitute work product. Alternatively, defendants contend that if the work product doctrine applies to the tapes, any protection has been vitiated by the conduct of plaintiff's counsel. The defense also suggests that there is substantial need for the tapes that would overcome any claim of work product protection. Defendants submit that deposition testimony should be compelled as to the content of the tapes even if the tapes themselves are protected by the work product doctrine. Finally, Maritz seeks sanctions pursuant to Rules 30 and 37 of the Federal Rules of Civil Procedure for plaintiff's refusal to answer questions regarding the tapes at her deposition.

In opposition, Ward suggests that the statements of Bauer, Jakubek and Proctor constitute work product, as they were obtained by plaintiff for litigation purposes. Ward asserts that her counsel's guidance regarding the type of information that would be most useful to her case should further shield the statements under the work product doctrine. Plaintiff suggests that the defense is able to obtain equivalent discovery through other means, such as the depositions of the witnesses. Ward argues that electronic recording is a viable means of obtaining evidence and should be afforded the full protections of the work product doctrine. Ward also contends that compelling plaintiff to give deposition testimony as to the content of the tapes would impermissibly circumvent the work product doctrine. Finally, plaintiff insists that sanctions are inappropriate where

plaintiff merely refused to answer questions regarding information protected by the work product doctrine. With this background, the Court will now turn to the legal standard that governs these motions.

### Discussion

#### 1. Production of the Tape Recordings

■ It is fundamental under the Federal Rules of Civil Procedure that the work product doctrine offers a qualified protection for documents and tangible things prepared in anticipation of litigation or for trial by or for a party or by or for the party's representative, such as an attorney. Fed.R.Civ.P. 26(b)(3). Such materials are discoverable only where the moving party demonstrates a substantial need for the materials and is unable without undue hardship to obtain their substantial equivalent by other means. Nevertheless, Rule 26 requires that even where such a showing has been made, the Court protect against disclosure the mental impressions, conclusions, opinions or legal theories of an attorney with respect to the litigation. Thus, the Rule differentiates between "ordinary" and "opinion" work product, a distinction first recognized in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). See Upjohn Co. v. United States, 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981); Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir.), cert. denied, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985).

■ The work product doctrine is "qualified" in another sense: Protection may be vitiated by the unprofessional or unethical behavior of an attorney or a party. Parrott v. Wilson, 707 F.2d 1262, 1270–72 (11th Cir.), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); Moody v. IRS, 654 F.2d 795, 800 (D.C.Cir.1981).

■ In Parrott, plaintiff's counsel clandestinely recorded telephone conversations that he had with two witnesses to the circumstances surrounding the death of plaintiff's son. The Eleventh Circuit held that whatever work product protection might have applied to the tapes was vitiated by the attor-

ney's secretive recording of the conversations. *Parrott*, 707 F.2d at 1272.

In *Moody*, the moving party sought to compel the production of a document detailing a meeting between an IRS lawyer and the judge presiding over the receivership of the Moody bank. Counsel for the receiver was excluded from the meeting. The District of Columbia Circuit remanded the case for a determination as to whether such exclusion vitiated the work product doctrine that might have attached to the document.[2] The *Moody* court stated that "[i]t would indeed be perverse ... to allow a lawyer to claim an evidentiary privilege to prevent disclosure of work product generated by those very activities the privilege was meant to prevent." *Moody*, 654 F.2d at 800.

The *Parrott* and *Moody* decisions provide the broad landscape for the current motion, while several other decisions present a more detailed perspective with regard to the precise issue before the Court. Indeed, the cases extant on the issue of clandestinely recorded conversations with nonparties comprise a discrete body of caselaw. Before turning to such cases, however, it must be emphasized that the present motion involves the work product doctrine as applied to a party's *secret, one-sided* recordings of conversations with third persons. Statements of witnesses taken by attorneys, with such witnesses' full knowledge, clearly constitute work product. *See Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 508, 511 (S.D.N.Y. 1992); *Thornton v. Continental Grain Co.*, 103 F.R.D. 605, 606 (S.D.Ill.1984). Such knowledge was lacking in this case, however.

The case of *Bogan v. Northwestern Mutual Life Insurance Co.*, 144 F.R.D. 51 (S.D.N.Y.1992), is directly on point. In *Bo-*

*gan*, the plaintiffs tape-recorded conversations with certain witnesses without their consent. The plaintiffs claimed that the recordings were made in preparation of litigation. Nonetheless, the *Bogan* court ordered the production of the tapes to opposing counsel.

The court articulated a myriad of concerns with respect to the continued secrecy of the tapes. First, the court stated that "known, claimed or suspected contents of such tapes in the hands of one party might lead to distortion of witnesses' testimony because of concern over how the tapes might be used." *Id.* at 53. The court observed that "[e]ven if the tapes were prepared in connection with the litigation, attorney involvement in encouraging taping of this type raises questions of legal ethics justifying, at the least, provision of the tapes to the adversary so that any relevant issues can be explored." *Id.* The *Bogan* court also commented that one-sided, surreptitious taping of potential witnesses without discovery could produce an unfairly prejudicial effect in that witnesses could be subjected to surprise introduction of tapes at trial or potential blackmail. *Id.* at 56.

The court explained that the "extremely mild remedy of discovery" would not interfere with the right of the plaintiffs or their counsel to interview witnesses, except where secret taping without the consent of the interviewee is involved. *Id.* at 54, 56. The *Bogan* court concluded that where unconsented, secret tape recording has occurred, the use of the tapes for litigation purposes should not be approved without discovery absent "special circumstances." *Id.* at 56.

In addition to *Bogan*, several other cases have addressed this issue. In *Haigh v. Matsushita Elec. Corp. of America*, 676 F.Supp.

---

**2.** On remand, the district court determined that there was no vitiation. *Moody v. I.R.S.*, 527 F.Supp. 535, 537 (D.D.C.1981). The district court underscored that the *ex parte* contacts related neither to a pending proceeding nor to the merits of a pending proceeding because at the time of the contacts, the IRS was not a party to any proceeding involving the defendant company. *Id.* Subsequently, the District of Columbia Circuit reconsidered the matter and again remanded the case for further consideration in light of its intervening decision in *Grolier, Inc. v. F.T.C.*, 671 F.2d 553 (D.C.Cir.1982), which "held

that the work product privilege is not absolute but extends only to subsequent related cases." *Moody v. I.R.S.*, 682 F.2d 266, 268 (D.C.Cir. 1982). Completing the *Moody* odyssey, the district court reaffirmed its prior decision, stating that the IRS attorney's conduct did not offend Disciplinary Rule 7–110, which prohibits *ex parte* contacts "with a judge or an official before whom the proceeding is pending," because the meeting did not relate to a pending proceeding or the merits thereof. *Moody v. I.R.S.*, Civ.Action No. 77–1825, 1983 WL 1668, *2 (D.D.C. Oct. 14, 1983).

1332 (E.D.Va.1987), the plaintiff, acting on his own initiative and absent directives from his counsel, tape-recorded conversations with fifty-eight individuals without their knowledge. Plaintiff provided the tapes to his counsel within a day or two following each conversation, and the contents of the tapes were reviewed by counsel and used to prepare the complaint and discovery requests.

While finding that the tapes constituted work product, the *Haigh* court determined that the protections of the work product doctrine had been vitiated by the conduct of plaintiff's counsel. The court stated that, rather than merely passive and noncommittal acquiescence, counsel's actions comprised "active encouragement and affirmative support" for plaintiff's secret tape recording. *Id.* at 1359. The *Haigh* court found that such conduct vitiated the work product protection.

Similarly, in *Wilson v. Lamb*, 125 F.R.D. 142 (E.D.Ky.1989), plaintiff and his counsel recorded a meeting with two defense witnesses without their knowledge or consent. The witnesses certified that they would not have participated in the meeting had they known that it was being recorded. The *Wilson* court "assumed" that the tape constituted work product. *Id.* at 143, n. 1. Relying upon *Parrott, Moody* and *Haigh*, the court determined that the conduct of plaintiff and his counsel vitiated the work product protection that otherwise would have attached to the tapes. *See also Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 686 (5th Cir.), *cert. denied*, 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989) (failure to reveal clandestinely recorded tape of conversation between defense counsel and witness waives work product protection as contravention of ABA Model Rules of Professional Conduct).

Finally, two other cases merit attention. The first is *In re Hunter Studios, Inc.*, 164 B.R. 431 (Bankr.E.D.N.Y.1994), in which an attorney tape-recorded a conversation between himself and a purchaser without the latter's consent or knowledge. The conversation occurred three years before the attorney became engaged in the matter. Relying upon Formal Opinion 337 of the American Bar Association Committee on Ethics and Professional Responsibility, the *Hunter Studios* court determined that a recording is not inadmissible solely because it is created by an attorney. *Id.* at 439. The bankruptcy court articulated a series of rationales for the proscription against an attorney obtaining a secret recording while engaged in a matter: the appearance of surreptitiousness; the decrease in public confidence in the bar and the public's desire to speak openly; and, the enticement for attorneys to "create" evidence.[3] *Id.*

The other case that merits scrutiny is *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Sys., Inc.*, 108 F.R.D. 686 (S.D.N.Y. 1985). In *Hayden*, the principal of the plaintiff corporations secretly recorded telephone conversations with a former employee of the defendant corporation. The defendant moved to compel the plaintiffs to produce the tapes. The *Hayden* court began its analysis by speculating that the tapes constituted work product, although the court noted that the parties had not sufficiently addressed that issue. In denying the motion to compel, the court reached a practical resolution. Noting that defense counsel and the former employee were "on friendly terms" in that counsel represented the former employee at his deposition, the *Hayden* court commented that defense counsel "can, and almost certainly already has," learned about the recorded conversations from the former employee. *Id.* at 690. The court further noted that the defendant could obtain the tapes by having the former employee request them from the plaintiffs pursuant to *Fed.R.Civ.P.* 26(b)(3).[4] *Id.* at 691.

---

**3.** The *Hunter Studios* court found that the tape recording was admissible, however, because the attorney was acting as a layperson when he made the recording. The bankruptcy court reasoned that "[t]he unfavorable characteristics of the action when taken by an attorney engaged in the representation of someone other than her or himself, are not present when taken by a layperson or non-engaged attorney." *Id.* It should be

noted, however, that the *Hunter Studios* decision does not state whether the adversary was afforded discovery of the tape recording. Rather, the issue before the court was the admissibility of the tape at trial.

**4.** On this point, there is an interesting divergence between *Hayden* and *In re Convergent Technolo-*

While resolving the motion to compel on the particular facts present in the case, the *Hayden* court, in a footnote, addressed the very issue that is presently before this Court. The *Hayden* court remarked: "The entire situation raises a concern in the court's mind which may have to be addressed at a later time: the ethical ramifications of an attorney, who is not himself permitted to record a conversation with a third party without that party's consent, directing his client to do so and the effect of such a circumstance on work product protection." *Id.* at 690, n. 5. It appears that such "later time" has arrived in this district by means of the present application by defendant Maritz.

The threshold inquiry in any case involving the work product doctrine is whether the given materials comprise work product as defined in Rule 26(b)(3). In this case, the circumstances surrounding the tape recordings reveal that the tapes were created in preparation for trial. The recordings occurred after the complaint was filed. The idea of the recordings appears to have been first proposed by plaintiff's counsel. Counsel advised Ward as to the type of statements that would be most beneficial to her case. Ward placed the calls from her counsel's office, although the attorneys were not present during the conversations. These facts clearly demonstrate that the recordings were prepared for litigation or trial purposes and, thus, constitute work product under the Federal Rules. Indeed, defense counsel conceded at oral argument that the tapes satisfied the technical definition of work product.

Under Rule 26, the protection of the work product rule may be overcome if the party seeking discovery demonstrates a substantial need for the materials and that it is unable without undue hardship to obtain their equivalent by other means. In this case, the Court need not resolve the "substantial need" and "undue hardship" issues because the Court finds that the work product doctrine has been vitiated.

■ The discrete issue in this regard is whether the method used by plaintiff and her

counsel, *i.e.*, secret tape recording, to obtain the statements of the three witnesses should defeat the protection of the work product doctrine. In answering this question, the Court has examined the cases discussed above as well as various ethics opinions on the subject of secret, one-sided tape recording. It is important to distinguish between two areas of concern: the issue of whether certain conduct is ethical or unethical and the issue of whether certain conduct vitiates the work product rule. Conduct that is deemed "ethical" or permissible under prevailing standards of professional responsibility may nevertheless abrogate the work product doctrine and result in the discoverability of the materials.

As an initial matter, it should be noted that no opinion of a New Jersey ethics committee has been cited or found relating to the present issue. ABA Formal Opinion 337, dated August 10, 1974, is the genesis of the tape recording issue as far as ethics opinions are concerned. *Opinion 337* determined that, with certain exceptions, "no lawyer should record any conversation whether by tapes or other electronic device, without the consent or prior knowledge of all parties to the conversation." The opinion maintained that the conduct involving dishonesty, fraud, deceit or misrepresentation proscribed by Disciplinary Rule 1–102(A)(4) encompassed secret recording by an attorney of conversations with any persons.

Plaintiff argues that because New Jersey has adopted the Rules of Professional Conduct ("RPC") rather than the Code of Professional Responsibility upon which Opinion 337 was based, the Opinion and its interpretive caselaw, such as *Parrott*, should be discounted. This suggestion is unavailing, however. The RPC contain the exact proscription against "conduct involving dishonesty, fraud, deceit or misrepresentation" upon which Opinion 337 relied. *See* RPC 8.4(c). Clearly, the message is the same whether it is expressed in the RPC or the Code of Professional Responsibility, and there is no reason to dismiss these valid interpretations.

---

*gies Second Half 1984 Sec. Litig.,* 122 F.R.D. 555 (N.D.Cal.1988), discussed *infra.* The latter court went to great lengths to prevent the very process

under Rule 26(b)(3) that *Hayden* recognized and did not condemn.

Additionally, plaintiff points to Opinion 696 of the New York County Lawyer Association's Committee on Professional Ethics as "rejecting" Opinion 337. Ward Opposition Brief, at 8. Noting that "normative standards change over time," Opinion 696 held that "[a] lawyer may secretly record telephone conversations with third parties, provided one party to the conversation consents and the recording does not violate any applicable law or specific ethical rule." Nevertheless, Opinion 696 declared that "a lawyer may not use recorded statements out of context or in an otherwise misleading way." The Opinion also warned that "[i]t would be ethically improper under [DR 7–104(A)(1) ] [5] for an attorney to record or cause to be recorded any conversation with an adverse party or witness represented by counsel without that party's consent or prior knowledge." It is significant for purposes of the present motion that the New York Opinion anticipated that "a lawyer may be creating discoverable evidence" where he records a telephone conversation with a client or between a client and a third party. The Opinion observes that "[t]his may result in an accompanying duty not to suppress such evidence."

A variant of this latter situation occurred in this case. In short, plaintiff herself secretly recorded conversations with potential witnesses immediately after consultation with her attorneys. Also, plaintiff denied to at least one of these persons that she was recording their conversation. *See* Jakubek Affidavit, at ¶ 4. While such conduct may not be deemed unethical under the recent New York Opinion 696, the Court notes that this Opinion is not controlling in this district. More importantly, this Opinion explicitly stated that discoverable evidence may be created by secret tape recording. Thus, Opinion 696 recognized the distinction between the issue of ethics and the issue of discoverability.

Accordingly, regardless of whether the conduct of plaintiff's counsel violated the RPC, the Court finds that the secret tape recording vitiated the work product rule. The unprofessional behavior of plaintiff's attorneys in counseling Ward to surreptitiously record conversations, during one of which she denied that the recording was taking place, should abrogate the protection of the work product doctrine. The Court does not find any "special circumstances," as articulated in *Bogan,* that might overcome the finding of vitiation. Such abrogation will result in the discovery of the tapes by defense counsel, nothing more.

Production of the tapes also accords with the principle of fairness governing the application of the work product doctrine. *See Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.,* 123 F.R.D. 198, 201 (M.D.N.C.1988) (work product rule "is a tool of judicial administration, borne out of concerns over fairness and convenience and designed to safeguard the adversarial system, but not having an intrinsic value in itself outside the litigation arena"). In this case, the concerns of fairness and safeguarding the adversary process require the production of the tape recordings. Without such production, plaintiff unilaterally maintains the ability to use the secretly recorded statements for discovery purposes and for impeachment purposes at trial. Fundamental fairness requires that the defense be afforded the opportunity, if Maritz so desires, to use the statements to impeach the credibility of the witnesses, a capability that rests solely with plaintiff at this point.

Finally, it is appropriate to address an issue raised by plaintiff's counsel at oral argument. Plaintiff's counsel cited *In re Convergent Technologies Second Half 1984 Sec. Litig.,* 122 F.R.D. 555 (N.D.Cal.1988), for the proposition that Jakubek and Bauer, the AT & T employees who requested the recordings from plaintiff's counsel, should not be permitted to obtain copies of the tapes pursuant to Rule 26(b)(3) [6] because, if the witnesses then

---

**5.** DR 7–104(A) states: "During the course of his representation of a client a lawyer shall not: (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that

matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

**6.** Rule 26(b)(3) provides:

gave the copies to defense counsel, the work product protection that should apply to the tapes would be circumvented.

In *Convergent Technologies,* counsel for plaintiffs privately interviewed two former employees of the defendant corporation. The nonparty employees consented to the interviews and were asked to correct any errors in the attorney's notes. One of interviewees signed his "statement," while the other was not asked to do so. The defendant issued a subpoena requiring the nonparty witnesses to obtain the statements from plaintiff under Rule 26(b)(3). Plaintiffs moved to quash the subpoena.

The *Convergent Technologies* court framed the issue as "not whether defense counsel have a right to learn the relevant factual information, but whether they have a right to that information in a particular form, namely, a piece of paper prepared by plaintiffs' counsel and signed by a non-party witness." *Id.* at 558. The court engaged in an extensive review of the Advisory Committee deliberations on Rule 26(b)(3) and concluded that nonparty witness statements are presumptively entitled to work product protection from an adversary. *Id.* at 563. The *Convergent Technologies* court explained that Rule 26(b)(3) was not intended "to enable parties to acquire non-party statements without a showing sufficient to penetrate work product protection." *Id.* at 562–63. In quashing the subpoena, the court also ordered that the nonparty witnesses could not provide the defense with their statements. *Id.* at 567.

In this case, where there is a finding that the work product rule has been vitiated, the concern articulated by plaintiff's counsel as to the defense's discovery of the tapes by means of Rule 26(b)(3) is obviated. Maritz is entitled to discovery of the recordings on the basis of vitiation, not pursuant to the Jakubek and Bauer requests.

In conclusion, the Court finds that the work product doctrine has been vitiated by plaintiff's secretive recording of her conversations with the three witnesses. The tapes shall be produced to defense counsel within 15 days of the date of the accompanying Order.

### 2. *Further Deposition Testimony*

 Maritz also seeks to compel further deposition testimony as to the circumstances surrounding the making of the recordings. The work product doctrine protects against the disclosure of protected documents or communications, not the underlying facts. *See Upjohn Co. v. United States,* 449 U.S. 383, 395–96, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981). Consequently, it does not contravene the work product rule for an attorney to question an opposing party as to the information contained in protected documents. *See Jaroslawicz v. Engelhard Corp.,* 115 F.R.D. 515, 518 (D.N.J.1987). In other words, where an attorney is "incisive enough to recognize and question" an opposing party on facts contained in protected documents, "[t]he fear that [opposing counsel's] work product would be revealed would thus become groundless." *Sporck v. Peil,* 759 F.2d 312, 318 (3rd Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985). *See also Leonen v. Johns–Manville,* 135 F.R.D. 94 (D.N.J.1990).

The Court believes that it is permissible and appropriate for defense counsel to further depose plaintiff as to the circumstances surrounding the tape recordings. The facts contained on the tapes are not protected by the work product doctrine. Nor, for that matter, are the facts relating to how, when and why the recordings were made. Plaintiff shall appear for further deposition with respect to these foundation questions.

### 3. *Sanctions*

Finally, there is the issue of fees and sanctions. While it is certainly within the Court's discretion to award costs to defense counsel,

---

Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order.... For purposes of this paragraph, a statement previous-

ly made is ... (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

the Court does not believe that such an award is mandated in this case. The position taken by plaintiff's counsel at the deposition was not so contrary to law that sanctions are required.

An appropriate Order will be entered.

### ORDER

This matter having been opened to the Court by Crummy, Del Deo, Dolan, Griffinger & Vecchione, P.C., by Kerry M. Parker, Esq., counsel for defendants Maritz Inc. and Maritz Marketing Research Inc., on application for an Order compelling the production of certain tape recordings and testimony and for sanctions, and the Court having considered the moving, opposition and reply papers, as well as the arguments of counsel at oral argument held on July 5, 1994, and for good cause shown,

IT IS on this 7th day of July, 1994,

ORDERED that defendants' motions to compel the production of certain tape recordings and further deposition testimony by plaintiff are hereby granted in accordance with the accompanying Opinion; and it is further

ORDERED that the tape recordings shall be produced to defense counsel within 15 days of the date of this Order; and it is further

ORDERED that plaintiff shall appear for further deposition at a mutually convenient time; and it is further

ORDERED that defendants' motion for fees and sanctions is hereby denied.